. IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| ROBERT KOLBUSZ, | |
| PLAINTIFF | |
| vs. | Civil Action No.  17-0319 (EGS/GMH) |
| FEDERAL BUREAU OF INVESTIGATION, et al., | Magistrate Judge Harvey |
| DEFENDANTS | |

---

### PLAINTIFF'S (KOLBUSZ) REPLY TO THE DEFENDANT'S REPLY MOTIONS FOR:

### SUPPORT OF MOTION FOR SUMMARY JUDGMENT & OPPSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT, MOTION TO COMPEL, AND MOTION TO ALTER OR AMEND JUDGMENT

---

Pro se Plaintiff (Kolbusz) submits his reply to the Government's Motions for Summary Judgment and other Opposition motions.  In short, the Government's tome contends that the FBI and EOUSA complied with all FOIA statutes and standards and did not improperly apply FOIA exemptions or improperly withhold any records and their searches were adequate.

In regards to FOIA requests for third party records, AUSA  argues that Kolbusz failed to exhaust the required FOIA administrative remedies and did not obtain consent for these records.  Kolbusz  has proven that that this information is already contained within the public domain. Also, these same  files would be found in Kolbusz' general EOUSA case file which is the subject of Kolbusz' Second Supplemental Complaint.  The question of whether duplicative FOIA requests satisfy administrative exhaustion is now before this Court.

AUSA  manufactures a brand new rationale for denying  a different  FOIA request that  Kolbusz made to EOUSA, which forms the basis of his Second Supplemental Complaint..  The Government, for the first time ever, challenges Kolbusz' Second Supplemental Complaint  in its reply brief.  Arguments that are raised for the first time in reply briefs should be stricken.  Nevertheless, AUSA Tilghman claims that Kolbusz is requesting his case file through FOIA to challenge his criminal conviction in a pending 2255 action. Kolbusz has made no such argument or request  in his Motion for Summary Judgment. The arguments for the release of his documents under FOIA stand solely on the merits of the FOIA statutes, D.C. Circuit case law and the public's interest.  References to documents from Kolbusz' criminal case are only offered as non-conclusory proof that voluminous documents are in the possession of the FBI and

EOUSA, have been preserved by 7th Circuit District Court Order and have been improperly withheld by misapplying a variety of FOIA Exemptions. The Government can no longer deny the proof that these documents not only exist, but should be released by the doctrine of public domain.

Kolbusz has also shown that the Government misapplied other FOIA Exemptions (5, 6, 7(A, C, D &E) ) and did not release segregable parts of withheld documents. All the withholdings are improper as the Government has never produced a complete Vaughn Index to justify its withholdings.

The public currently has great interest in improperly withheld FOIA documents. The Government's misconduct of withholding FOIA documents is highly publicized in the current news cycle in relation to Senator Ted Stevens, General Flynn, President Trump and Vice-President Biden. The public interest in the Government's cryptic files and investigations could never be greater than right now.


Finally, Judge Sullivan's denial to hold the Government in contempt and compel documents has little relevance to the motions currently in review. Judge Sullivan has transferred this case to the Magistrate to evaluate these motions de novo (Minute Order 1/10/2020). Judge Harvey has already ruled that these motions are able to freely stand on the merits for further reconsideration ( EFC No. 52).

In Summary, In Plaintiff's Motion for Summary Judgement, Kolbusz has proven that the Government has improperly denied and withheld the requested FOIA documents and either misinterpreted or deliberately ignored the FOIA Statutes and case law. The Government has already admitted that its searches were inadequate when asking for extension of time after "The FBI ("RIDS") recently reviewed information withheld under FOIA Exemption 5 and determined a supplemental release is necessary…..but it will need until July 31, 2020 to complete this process." (EFC No. 64 p.2 @ #4, 6/23/2020). Kolbusz has shown that he has withstood the Government's Motion for Summary Judgment.  Kolbusz will now concisely reply to each of the Government's arguments in support of Plaintiff's Motion for Summary Judgment.

## BACKGROUND


On October 1, 2017 Kolbusz was denied a FOIA request to the FBI for "no responsive records", which led to the filing of this FOIA suit on February 17, 2017 (EFC No. 1). The continued denials of Kolbusz' other FOIA requests for "no responsive records" necessitated the filing of his Supplemental Complaint (EFC No. 3, March 6, 2017) and Second Supplemental Complaint (EFC No. 25, October 2, 2018) respectively.

FOIA denied Kolbusz' requests for "no responsive documents".  But after filing this lawsuit on 2/27/2017, the Government then admitted it had responsive documents.  "The FBI has completed its searches, which have resulted in 2,942 of potentially responsive material and 80 CDs of additional material. The FBI is referring 20 of those CDs to EOUSA because the material on them originated in United States Attorneys' Offices. FBI proposes to provide the information on the remaining CDs to Plaintiff on or before July 2, 2018.  The FBI proposes to make its first production of other documents to

Plaintiff on September 4, 2018, and to review and process 500 pages per month on a rolling basis, thereafter with additional productions on the first of each month." (EFC No. 18, Status Report 6/5/2018). Based on the FBI's proposal "the Court directe[d] the FBI to complete its production of documents to plaintiff by no later than September 18, 2018. (Minute Order: 6/20/2018).

The Government's only cited accomplishments in this case are that they have survived motions for default judgments and motions to compel despite 3 years of unwarranted extensions and delays. In contrast, the Court has granted on the merits, Kolbusz' Initial Complaint (EFC No. 1), Supplemental Complaint (EFC No. 3 ) and Second Supplemental Complaint (EFC No. 25). Likewise, Kolbusz has withstood multiple Motions for the Government to dismiss his complaint in entirety.

The Government's anemic document release included approximately 900 heavily redacted pages, rendering the majority of them useless. Kolbusz has submitted the Proof in his Motion for Summary Judgment, that the Government has withheld millions of responsive documents, claiming erroneous FOIA exemptions and redactions despite these same documents being part of the existing public domain.

It is noteworthy, that this case was referred to the Magistrate on 1/10/2020 for full case management. On 1/21/2020, Judge Harvey made several rulings on open motions. Kolbusz' Motion to renew original motion for summary Judgment (EFC No. 46) was denied as moot. However, Motion 46 was already incorporated in the support of Kolbusz' Motion in Opposition to the Government's Motion for Summary Judgment (EFC No. 50, 12/27/2019). Kolbusz heavily relied on EFC No. 46, in his opposition motion (EFC No. 50). All these filings occurred prior to Judge Harvey's orders.

## REPLY TO GOVERNMENT'S   ARGUMENTS

## I.   Government Mistakenly Claims It Conducted Adequate Searches to . Uncover All Relevant Documents for Kolbusz' FOIA Request

### A. The FBI SEARCH OF THE CENTRAL RECORDS SYSTEM WAS INADEQUATE (R. P6)

**1) THE GOVERNMENT NOW CLAIMS THAT ITS SEARCHES WERE ADEQUATE ONLY BECAUSE KOLBUSZ' FOIA REQUEST SUDDENLY BECAME DEFICIENT IN SCOPE.**

The Government states:

"Plaintiff submitted to the FBI a records request seeking '[a]ny and all FBI 302's and agents handwritten notes, e-mails, letters or other correspondence containing [his] name.' Plaintiff's request does not indicate a reasonable professional desire to obtain all records the FBI obtained during its investigation to Plaintiff…Nor does his request ask for the items outline[d] in exhibits 3-5 to his Response as he suggests." (p7).

**A) GOVERNMENT HAS NOT IDENTIFIED A DEFIC IENCY IN THE SCOPE OF KOLBUSZ' FOIA REQUEST**

(1) In the Government's Motion for Summary Judgment  (EFC No 48,October 3, 2019; p4-9), they claim that the FBI  did an extensive search of all their systems and records including search terms "Robert V Kolbusz" and "Robert Kolbusz" (p8). "Second, given Plaintiff's request seeks information about Robert Kolbusz, such information would reasonably be expected to be located in the CRS via the index search method." (p9).

(2) In David Hardy's Declaration regarding the FBI search of records, he never states that there was any problem or discrepancy identifying the "scope" of Kolbusz' FOIA request  (Hardy Declaration #5-31). Hardy confirmed that "Second, given Plaintiff's requests seeks information about ROBERT KOLBUSZ, such information would reasonably be expected to be located in the CRS via the index search methodology." (Hardy Declaration @ 31).

(3) On 1, 2017, the OIP denied Kolbusz' appeal for his FBI FOIA request (Hardy Declaration @12, Exhibit H).  The denial was solely based on the determination that the documents were exempt from disclosure under the Privacy Act:

"Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of the FBI in your response to your request."

The attorney's thorough review and analysis NEVER mentioned an issue or discrepancy with the "scope" of the request.

**B) <u>THE SCOPE OF THE REQUEST WAS REASONABLY INFERRED.</u>**

The Government argues that "Plaintiff's request does not indicate a reasonable professional desire to obtain all records the obtained during its investigation of Plaintiff. (p7 & 2nd  Seidel Decl. @9). Nor does his request ask for the items outline[d] in exhibits 3 through 5 to his response as he suggests."

<u>THE GOVERNMENT'S ARGUMENT REGARDING SCOPE FAILS ON MULTIPLE LEVELS:</u>

**(1)** <u>THE GOVERNMENT HAS NOT ESTABLISHED THAT THE SCOPE OF KOLBUSZ' REQUEST IS   DEFICIENT:</u>

The Government acknowledge that Kolbusz requested documents "containing [his] name."

a) In  Kolbusz' Response  (EFC No. 50, p2),  Exhibit(s) 3-5 are Government  "correspondence" to the Court requesting  a Search Warrant (N. D. Ill. 11-mc-00424, filed 9/23/2011) for "Records relating to all patients treated by Kolbusz and his staff at CDSC" (@ 1).

b)  Exhibit 4 is the FBIs Inventory that was transmitted to the Court and other agencies with the "Case Name" of ROBERT KOLBUSZ.

c) Exhibit 5 describes the lists of "correspondence" Seized with Kolbusz' Name on them. In addition Kolbusz' Exhibit 2-A is the Court docket in 11-mc-00424, which lists and describes all the electronic

correspondence in that case.  Exhibit 2-B establishes that Center for Dermatology and Skin Cancer is associated with Robert  Kolbusz' name.

**(2)** <u>THE GOVERNMENT'S CLAIM THAT THE FOIA REQUEST WAS NOT REASONABLY INFERRED FAILS BY STATUTE AND D.C. CASE LAW</u>

"A core provision of the D.C. Code Section 2-532(c), which requires a "public body, upon request of reasonably describing any public record," to timely produce those documents in its possession or to provide a legitimate reason for nonproduction……..But neither D.C. Code Section 2-532© nor any other provision of D.C. FOIA states that a requester's failure to reasonably describe records to a FOIA officer's satisfaction will render the request void." (Fraternal Order of Police v. District of Columbia, 13-cv-1146, Decided: May 26, 2016).

**(3)** <u>DEFICIENCY OF SCOPE IS A NEW ARGUMENT FIRST RAISED IN GOVERNMENT'S REPLY BRIEF AND SHOULD BE STRICKEN</u>

The Government now raises a deficiency in the "scope" of the FOIA request for the First Time.  This argument was not raised in its opening brief for Summary Judgment (EFC. No. 48). In all the Government's filings throughout this case, it never once raised an argument regarding a deficiency in the scope of the Kolbusz' FOIA request until now.   AUSA SROKA, who originally defended this case, likewise, never brought such an argument to the Court's attention. In contrast, Judge Sullivan ordered the complete its production of documents to Plaintiff by no later than September 14, 2018, which was based upon this same FOIA request. (Minute Order 6/20/2018). There was no limitation  in scope.

The function of  reply brief is to "reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." MBI Grp., Inc. v. Credit Foncier Du Cameroun, 616 F.3d 568, 575 (D.C. Cir. 2010) (citing Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).  Courts in the D.C. Circuit generally refuse to entertain arguments raised for the first time in a reply brief. See, e.g. Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 196 (D.C. Cir. 1992) (noting D.C. Circuit generally refuses to entertain arguments first raised in appellant's reply brief); Day v. Dist. of Columbia, CA No. 10-2250 (ESH), 2012 WL 45649, at *14 n. 51 (D.D.C. Feb. 14, 2012) ("[T]he D.C. Circuit has consistently held…[that] the Court should not address arguments raised for the first time in a party's reply,") (quoting Jones v. Mukasey, 565 F. Supp. 2d 68, 81 (D.D.C. 2008)); Hicks v. Gotham, 828 F. Supp. 2d 152, 164 n.11 (D.D.C. 2011) (recognizing well-settled prudential doctrine that courts generally will not entertain new arguments first raised in reply briefs.) (Kenneth Campbell, et al., v. National Railroad Passenger Corporation.  1:99-cv-02979 (EGS), filed 11/16/2012).

**(4)** <u>ALL MISSING DOCUMENTS  REFERRENCED IN KOLBUSZ' RESPONSE WERE TRANSMITTED BY CORRESPONDENCE TO OTHER GOVERNMENT AGNECIES:</u>

Kolbusz has demonstrated that any missing FOIA documents containing his name were part of his FBI investigative file (Exhibit's 3-5) and were to be transmitted by correspondence to the Department of Justice in preparation for trial. (12-cr-782, N.D. Ill.).  To the extent that the Government may argue that

the case file was not transmitted to the DOJ and Prosecuting AUSA's; that would be an admission of Brady and Giglio Violations.

**2) THE SEARCH WAS INADEQUATE BECAUSE THE GOVERNMENT DID NOT DISCLOSE ALL INVESTIGATIVE 302'S AND CORRESPONDENCE WITH BLUE CROSS BLUE SHIELD:**

The Government acknowledges that Kolbusz FOIA request to the FBI included "Any and all FBI 302's" (R. p7).  However, the released 302's failed to include investigative reports of employees of Blue Cross Blue Shield of Illinois.  In Blue Cross' own court filings they admitted to the following:

"As noted above, HCSC has been involved in its own investigation of Plaintiff's fraudulent and abusive billing practices for several years, and HCSC IS ALSO COOPERATING WITH THE FBI IN ITS INVESTIGATION." (Robert V. Kolbusz and Center for Derm.  v. Health Care Service Corporation (HCSC), Case No. 10 CH 20250 (filed 6/11/2011, Cook County Court) **(EXHIBIT 1).**

Kolbusz is in possession of a plethora of references to interviews conducted by the FBI from his civil cases against Blue Cross (Center for Dermatology v. Health Care Service Corporation  IL  2008-00432) that have not been released by the FBI in its FOIA disclosure.  Kolbusz cannot submit  his documents in this case, as they are still under a Protective Court  Order. It would take an order from this Court to be able to potentially release these documents for review. Such order would  aid in proving that the FBI's FOIA searches and release of potentially responsive documents was deficient.

**3) THE GOVERNMENT CLAIMS THAT ITS STATEMENT OF UNDISPUTED FACTS SHOULD BE TREATED BY THE COURT AS UNDISPUTED AND CONCEDED  BECAUSE KOLUSZ FAILED TO REPOND TO THAT STATEMENT OR FILE A STATEMENT OF MATERIAL FACTS IN DISPUTE: (R. p6, fn.6)**

The Government cites LCvR 7(h)(1) as its authority. (p6, fn.6)

LCvR 7(h)(1) states in entirety:
 "(1) Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement.  An opposition to the motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.  Each such motion and opposition must also contain or be accompanied by a memorandum of points and authorities and proposed order as required by LCvR 7(a), (b) and (c).  In determining a motion for summary judgment, the Court may assume that facts  identified by the moving party in its statement of material facts are admitted, unless such a fact  is controverted in the statement of genuine issues filed in opposition to the motion."

In its Motion for Summary Judgment, AUSA Sroka included a Statement of the Government's version of allegedly Undisputed Facts to Which There Is No Genuine Issue (EFC No. 48 Attachment #1).

A**) GOVERNMENT'S ARGUMENT FOR CONCESSION FAILS ON MULTIPLE LEVELS AND SHOULD BE**
.   .       **DENIED**

(1) THE GOVERNMENT MAKES NO SUBSTANTIAL REFERENCE  TO THE EXITING RECORD IN DISPUTE

a) The Government's Statement of Undisputed Facts (EFC. No. 48, Attachment 1) is nothing  more than a regurgitation of the "new" declarations submitted by Hardy and Hudgins in reference to their own documents in their own personal records. There is no reference made to the existing docketed Motions and Status Reports that document the issues in dispute. (Note: the only reference to the docketed motions is that Kolbusz filed an Initial Complaint (EFC No. 1), a Supplemental Complaint (EFC No.3) and a Second Supplemental Complaint (EFC No. 3).  The Government made no reference in its statement of alleged undisputed facts (EFC No. 48, Attachment #1, #'s 30-38) to the existing record. There were documented facts in dispute regarding administrative exhaustion (Kolbusz' Supplemental Complaint (EFC No. 3) and Second Supplemental Complaint (EFC No. 25)), that were filed in Kolbusz' Motion for Summary Judgment (EFC No. 25 & 46).

(2) PLAINTIFF'S ALLEGED FAILURE TO RESPOND TO A STATEMENT OF UNDISPUTED FACTS IS  A  NEW ARGUMENT FIRST RAISED IN THE GOVERNMENT'S REPLY BRIEF AND SHOULD BE STRICKEN

a)  PROCEDURAL HISTORY:

On 4/25/2019 Kolbusz filed a Motion for Summary Judgment pertaining to AUSA Sroka's failing to file a purported Motion to Dismiss since 12/3/2018 (see Minute Order 12/3/2018).  Kolbusz sought Summary Judgment regarding the UNDISPUTED FACTS regarding his Supplemental Complaint (EFC No. 3) and Second Supplemental Complaint (EFC. No. 25). This Motion was initially denied as premature (Minute Orders 6/6/2019).  Kolbusz renewed this same Motion for Summary Judgment on 8/26/2019 (EFC. No. 46).  The Government  filed its Motion for Summary Judgment on 10/3/2019 (EFC No 48).

b) KOLBUSZ DID NOT INCLUDE  A SEPARATE STATEMENT OF MATERIAL FACTS IN DISPUTE IN HIS MOTION FOR SUMMARY JUDGMENT (EFC. No. 46).

In his Motion for Summary Judgment, Kolbusz did not include a separate statement of material facts in dispute.  The disputed facts were highlighted and supported by references in the record and case law. The Government's Motion for Summary Judgment (EFC. No. 48) contains no argument or objection to Kolbusz not having a separate statement of material facts included in his Summary Judgment  filing (EFC No.46).  Therefore, the Government's new argument in its reply brief should be stricken.

**Note:** The Magistrate ruled the Kolbusz' initial Motion for Summary Judgment (EFC No. 46) was Moot on 1/21/2020 (EFC No. 52).  At the time when the Government  filed its Motion for Summary Judgment (EFC. No 48), and Kolbusz filed his Opposition  Motion (EFC No. 50);  Kolbusz' Motion for Summary Judgment  (EFC No. 46) was an active motion. The Motion for Summary Judgment  (EFC No. 46) was already included within arguments during  Kolbusz' Opposition Motion (EFC No. 50).

c) KOLBUSZ DID FILE  A SEPARATE PAGE OF FACTS IN DISPUTE ENTITELD  "TABLE OF CONTENTS"

In Kolbusz' Opposition to Defendant's Motion for Summary Judgement (EFC No. 50) the facts in dispute were entitled "Table of Contents". The disputed facts were outlined with reference to the page numbers in the accompanying memorandum of law.  The memorandum included an introduction which again outlined the Facts in Dispute with each disputed fact  was highlighted and supported by a memorandum of law in a logical order.  The Government now asks this Court to rule in their favor, not on the merits of their case, but on an argument of technicality that the Government has already waived, supra.  Even if the Court would agree with this technicality, pro se and incarcerated litigants are generally granted wide latitude and the opportunity to correct technical filing deficiencies, infra.

d) <u>PRO SE LITIGANTS  SHOULD BE GIVEN LEEWAY TO PROVIDE THE COURT WITH THE NECESSARY INFORMATION</u>

If this Court finds that Kolbusz failed to comply with the specifics of local rule LCvR 7(h)(1), Kolbusz should be granted time to correct a potential technical deficiency. The D.C. Court has made clear that "courts may grant leeway to pro se litigants" with regard to technical rather than substantive, rules of procedure. Macleod v. Georgetown Univ. Med. Ctr., 736 A.2d 977, 980 (D.C. 1999); Doe v. D.C. Metro. Police Dep't, 948 A.2d 1210, 1219 n.15 (D.C. 2008) (pro se litigation warrants lenience).  Kolbusz, is a pro se and incarcerated litigant with limited resources and is not well versed in the D.C Court's local rules. Kolbusz submits his version of Facts in Dispute **(EHBITIT 2).**

**B. <u>EOUSA WAS NOT PERMITTED TO FORGO  KOLBUSZ' FOIA  SEARCH BASED UPON FUTILITY (R. p7-10)</u>**

The Government contends that Kolbusz was not entitled to FOIA records or Searches from EOUSA.

**A) FOIA REQUESTS REGARDING FOR DR. ROSS' CONTRACTS-- SUPPLEMENTAL COMPLAINT (EFC. NO, 3)**

**(1) GOVERNMENT'S ARGUMENT THAT KOLBUSZ DID NOT EXHAUST ADMINISTRATIVE REMEDIES**

The Government states that Kolbusz did not exhaust his administrative remedies for his FOIA request of February 8, 2017 by not  filing an appeal.  Kolbusz identifies this FOIA request of 2/8/2017 as records pertaining to Dr. Ross and is the subject matter of Kolbusz' Supplemental Complaint (ECF No. 3).

**(a) <u>THE GOVERNMENT HAS WAIVED THIS ARGUMENT AND IT SHOULD BE STRICKEN</u>**

_ The Government first consented to the filing of Kolbusz' Supplemental Complaint on 10/17/2018, EFC No. 28. (See also Minute Order 11/6/2018).  Initially the Government promised to file a motion to dismiss the underlying claim of this supplemental pleading on the grounds that Plaintiff failed to exhaust his administrative remedies ( See EFC NO. 28 , 10/17/2018, P.2, @4).  Subsequently, the Government filed and was granted multiple motions for extensions of time to file a Motion to Dismiss / Motion for Summary Judgment. (EFC. No(s). 29, 34, 42, 43, 47).  Notably, Extension (EFC No. 43) granted an extension to file "Dispositive Motion".

**(I)** *<u>THE GOVERNMENT NEVER FILED A MOTION TO DISMISS KOLBUSZ SUPPLEMENTAL COMPLAINT</u>*

On 8/26/2019, Kolbusz  filed his Motion for Summary Judgment (EFC No. 46), regarding  his Supplemental Complaint (DE #3) and Second Supplemental Complaint (DE #25).  Requesting Summary Judgment was appropriate because AUSA Sroka failed to file a Motion to Dismiss and all administrative remedies had been exhausted (EFC No. 46, p2).  Kolbusz' Motion also include the argument that he was entitled to Summary Judgment and release of Ross' records from a duplicate FOIA request dated 6/14/2018 (See EFC No. 46, p2 @2)

Subsequently in response, on 10/3/2019, Sroka  filed a motion entitled "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" (EFC No. 48).  A motion to dismiss Kolbusz'  Supplemental Complaint was not mentioned in this motions title or included within Sroka's memorandum of law.  Rather Sroka only argued that Dr. Ross' records could not be released due to provisions within the Privacy Act and because Ross had not signed consent  for release (EFC No. 48, p11). Hudgin's declaration regarding administrative exhaustion were not supported  in AUSA Sroka' memorandum of law.

See Shankar v. ACS-GSI, 258 Fed. Appx. 344, 345 (D.C. Cir. 20017) (Holding that  Plaintiff conceded the merits of an issue when he "did not respond in any way to defendant's argument" on that issue in his opposition before the district Court (citing local Civil Rule 76)); Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing FDIC v. Bender, 127 F. 3d 58, 67, 68 (D.C. Cir. 1997)).

 **(II)** <u>THE GOVERNMENT FOR THE FIRST TIME RAISES THIS ARGUMENT IN  ITS REPLY BRIEF AND  IT SHOULD BE STRICKEN</u>

The Government for the First Time now raises this argument in its Reply Brief and it should be stricken.  ("[T]he D.C. Circuit has consistently held ….[that] the Court should not address arguments raised for the first time in party's reply") (quoting  Jones v. Mukasey, 565 F. Supp. 2d 68, 81 (D.D.C. 2008), See other case law, supra.

 **(b) THE GOVERNMENT'S ARGUMENT THAT KOLBUSZ' DUPLICATE FOIA REQUEST FOR ROSS' CONTRACTS ARE NOT PART OF THE SUIT SHOULD BE STRICKEN (R. P8)**

The Government states that Kolbusz submitted a duplicate FOIA request for Ross' contracts in order to attempt to correct a failed administrative appeal and exhaustion from his initial February 8, 2017 FOIA request. The Government argues now for the first time in its reply brief that a duplicate FOIA request should not be considered as it is not part of this suit.  As legal authority they cite Toensing v. Dep't of Justice.

 <u>(i) THE GOVERNMENT RAISES THIS ARGUMENT FOR THE FIRST TIME IN  ITS REPLY BRIEF AND SHOULD BE STRICKEN</u>

In Plaintiff's Motion for Summary Judgment regarding requests for Ross' contracts, Kolbusz argued he was entitled to Summary Judgment because all FOIA administrative remedies have been exhausted. This

included the fact that exhaustion was accomplished by a duplicative FOIA request (EFC No. 46, p2). In addition Summary Judgment was appropriate because Sroka Never filed a Motion to Dismiss this Supplemental Complaint (EFC No, 3).

   Also, Sroka did not include a motion to dismiss in his Motion for Summary Judgment, nor did he argue that Kolbusz failed to reach administrative exhaustion on the February 8, 2017 FOIA request. Likewise, there is no argument that Kolbusz' duplicative FOIA request of 6/14/2018 for Ross' contracts was not part of this suit. Instead, Sroka argued that Ross' contracts could not be released due to Privacy Act exemptions. (EFC No. 48, p11).

   As noted supra, by AUSA Sroka never filing a Motion to Dismiss or address these arguments in his Motion for Summary Judgment, the arguments are conceded, waived and should be stricken. Likewise arguments raised for the first time in a reply brief should be stricken.

   Finally, the Government's reliance on Toensing v. Department of Justice is misplaced. Toensing's case involved a FOIA request from 2007-2008, in which he did receive some requested records, but never filed an appeal to parts of the denials made from his request. He filed a duplicate request in 2009-2010 to perfect his appeal exhaustion remedies and to ensure he received all applicable records.

   Kolbusz' filings have different circumstances than Toensing's. Here, Kolbusz identified in the appeal of his second FOIA request (6/14/2018), that this appeal was duplicative of the request made in 2017 (EFC No. 48, Exhibit 7). Unlike Toensing, Kolbusz never received any records from his original 2017 FOIA request.

   (ii) ARGUMENT'S THAT KOLBUSZ' FOIA REQUEST DID NOT IMPLICATE PUBLIC RECORDS SHOULD
    BE STRICKEN (R. p8).

   Similarly to the arguments supra, the Government did not meet its burden by filing a Motion to dismiss or address the argument in its Motion for Summary Judgment. Again, this is a new argument raised for the first time in the Government's Reply brief.

   The Government states that since Kolbusz' February 8, 2017 FOIA request did not indicate a request for "public records", EOUSA was justified in forgoing its searches. (R. p8). However, if the Court accepts the validity of Kolbusz' second FOIA request (6/14/2018) for Ross' contracts, Kolbusz clearly indicated that these records were in the public domain. (Kolbusz' Motion for Summary Judgment, EFC No. 46, Exhibit 5).

   **(c) GOVERNMENT'S ARGUMENTS THAT EOUSA NEED NOT SEARCH FOR  RECORDS RELATED TO
    KOLBUSZ' JULY 27, 2017 FOIA REQUEST  (SECOND SUPPLEMENTAL COMPLAINT EFC No. 25)
    BECAUSE HE HIS NOT ENTITLED TO THEM SHOULD BE STRICKEN (R. P9)**

   **KOLBUSZ RESTATES HIS ARGUMENTS CONTAINED IN HIS OPPOSTION MOTION (EFC NO. 50, p29)**

The Government does not deny that EOUS did not search any records regarding  Kolbusz' 7/27/2017 FOIA request (the subject of Kolbusz' Second Supplemental Complaint), but rather for the first time brazenly states that EOUSA  did not search because Kolbusz had no entitlement to these records.

**(1)** PROCEDURAL BACKGROUND

  a)  On July 27, 2017, Kolbusz file a FOIA request to EOUSA requesting:

   "All notes of interview, memorandum, e-mails, letters, reports, or documents
    of any kind, relating to the case of United States v. Robert Kolbusz, 12-cr-782,
    N.D. Il, Eastern Division, at Chicago, Illinois." (EFC No. 25, Exhibit 1).

  b) The denial of this request is the subject matter of Kolbusz' Second Supplemental Complaint (EFC No. 25, Exhibit 4).  The denial was assigned Request Number**: EOUSA--2017-003288**. The denial of May 19, 2018 stated:
   "A SEARCH FOR RECORDS LOCATED IN THE United States Attorney's office(s) for
    the Northern District  of Illinois has revealed no responsive records, regarding the
    above subject matter" (id. Exhibit 4).

  c) Kolbusz has shown that it is impossible that there were no responsive records because records were preserved by Court Order in this case (id. Exhibit 5).

**(2)** RESPONSIVE RECORDS DO EXIST TO WHICH KOLBUSZ IS ENTITILED

  a) By its own admission from FOIA records released from the FBI to Kolbusz, The FBI provided large files of documents to AUSA  in Illinois pertaining to Kolbusz, i.e. Palomar Techologies file and American Academy of Dermatology file.  (FBI Electronic Communication, Records provided to AUSA Stephen Lee dated 9/18/2014; FBI (17-cv-319)-225. (Plaint. Opp. EFC No. 50, Exhibit 50). Furthermore, this same document notes that the investigation of Kolbusz started on 6/13/2007.  Where are all these responsive investigative documents or a Vaugh Index supporting any denial of disclosure or the withholdings?

**(3)** OF EOUSA'S OWN ACCORD, THEY HAVE CONTINUED PROCESSING KOLBUSZ' FOIA REQUEST
    FROM JULY 27, 2017 (REQUEST No. EOUSA -2017-003288).

 In the height of this litigation, Kolbusz received an unsolicited letter from The Department of Justice OIP on November 11, 2019 stating:

   "I note that your appeal concern's EOUSA's response dated March 1, 2019, informing you
    that you request was a duplicate of Request No. **EOUSA-2017-003288."**

   "After carefully considering your appeal, and as result of discussions between EOUSA personnel
>    and this Office, I am remanding your request to EOUSA for further processing. You may appeal
    any future adverse determination made by EOUSA."  (Attached here as **EXHIBIT 3**).

 **** **NOTE:** Hudgins did not provide the Court this exculpatory document  in her Declaration exhibits.

**(4)** GOVERNMENT'S ARGUMENT THAT THE INABILITY FOR EOUSA TO REVIEW 3 CDs SHOULD NOT SHOULD NOT PRECLUDE SUMMARY JUDGMENT IS MERITLESS (R. p9-10)

The Government states that it irrelevant that the EOSA or the FBI did not review 3 potentially responsive CDs because they could not locate the encryption codes.  It is highly relevant that the alleged premier investigative agency in the world cannot unlock 3 of its own CDs. Likewise, Kolbusz has shown throughout his Motion in Opposition to Summary Judgment (EFC. 50) that the FBI inappropriately withheld millions of documents that it shared with EOUSA during the Investigation and trial of Kolbusz.

Furthermore, Hudgins continues to reference and evade the claim that there is some alleged agreement between Kolbusz and the FBI to narrow the scope of the request (R. p9, fn. 8. See Hudgins 2d Decl.39-41).  To date Hudgins has not produced any document or any reference to the record  proving such an agreement actually exists.

**(5**) DEFENDANT FAILED TO FILE A MOTION TO DISMISS KOLBUSZ' SECOND SUPPLEMENTAL COMPLAINT (EFC. No. 25) AND DID NOT ARGUE THIS SECOND SUPPLEMENTAL COMPLAINT IN HIS MOTION FOR SUMMARY JUDGMENT (EFC No, 48):   ARGUMENTS RAISED FOR THE FIRST TIME IN DEFENDAT'S REPLY BRIEF SHOULD BE STRICKEN.

In his Opposition Motion (EFC No. 50, p29), Kolbusz has shown that AUSA Sroka never filed the promised motion to dismiss Plaintiff's Second Supplemental Complaint (EFC No.25).  In his Motion for Summary Judgment (EFC No, 48), Sroka failed to raise any argument regarding the Second Supplemental Complaint at all. Likewise, Hudgins  did not address the Second Supplemental Complaint in her first declaration.

New arguments raised for the first time in a reply brief should be stricken. (id. Jones v. Mukasey, supra, p9). For all the above reasons, Kolbusz should be granted Summary Judgment in his favor.

## II.  DEFENDANT'S  IMPROPERLY WITHHELD INFORMATION UNDER PRIVACY ACT AND FOIA (Def R. p 10-13)

Kolbusz reasserts all arguments made in his opposition brief (EFC No. 50, p3-7)

### A. DEFENDANTS' WITHHOLDING UNDER THE PRIVACY ACT

1.   THE FBI IMPROPERLY APPLIED THE PRIVACY ACT EXEMPTION (j)(2) to WITHHOLD INFORMATION IN ITS CRS

a) The FBI incorrectly claims that Privacy Act Exemption (j)(2) "provides that agencies may exempt any system of records from the Privacy Act, which is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to enforcement of criminal laws." The Government cites Mobley v. CIA as authority.  The FBI uses a broad sweeping  authority to withhold Kolbusz' records, but ignores its duties to prove that any of the required 6 harms detailed in 5 USC 552(b)(7) apply to this case, infra.

A Justice Department regulation, promulgated pursuant to § 552a(j)-(k), exempts the FBI's CRS from disclosure under sub-section (d) of the Privacy Act. 28 C.F.R. § 16.96(a).  A particular record in the CRS is exempt, however, only if the FBI demonstrates that the record is a law enforcement record within the meaning of the Privacy Act. Doe v. FBI, 936 F.2d at 1352-52 (D.C. Cir. 1991).

Although both subsections (j) and (k) refer to "systems of records," the Court has  previously held that 28 C.F.R. § 16.96 (1990), the FBI exemption regulation respecting its CRS, does not remove that entire filing system from the requirements of the Act; rather, CRS documents qualify for exemption only if they constitute law enforcement records within the meaning of the statute. Vymetalik v. FBI, 785 F.2d 1090, 1095 (D.C. Cir. 1986).  Accordingly, the FBI bears the burden of demonstrating a law enforcement purpose for each record as to which it has claimed exemption in this case.

The next task, then, is to determine whether shielding the FBI from the Privacy Act's amendment provisions would serve the interests underlying the agency's exemption of its law enforcement  records from those provisions. In *Abramson,* this inquiry was subsumed within the determination of whether the documents came within the ambit of Exemption 7, because Congress expressly restricted the coverage of FOIA's law enforcement record exemption to those records whose disclosure would have specific adverse effects. *See* 5 U.S.C. § 552(b)(7) (1988) (listing the six types of disclosure-related harms justifying exemption of law enforcement records). As a result, the treatment of recompiled records under FOIA is fairly straightforward: "[o]nce it is established that  information was compiled pursuant to a legitimate law enforcement investigation and that disclosure of such information would lead to one of the listed harms, the information is exempt." *Abramson,* 456 U.S. at 631, 102 S.Ct. at 2064.

5 USC Section 552(b)(7) SIX TYPES OF DISCLOSURE RELATED HARMS:  Section 5(b)(7) states;

**(7)** records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

b) THE FBI /EOSA HAS FAILED TO SHOW THAT ANY OF THE 6 EXEMPTIONS APPLY IN THIS CASE

In their Reply Brief (p.10-12), the Government  has not made any showing that any of these 6 harms apply to Kolbusz' request. Rather, they erroneously state that that "The absence of an "ongoing investigation" and whether a Vaugh Index was provided to support the FBI's withholding under the

Privacy Act are of no moment. (Def. R. p11).  Clearly, if there is no ongoing investigation and Kolbusz has already been to trial in this case (12-cr-782, N.D. Ill, 2014), then 552(b)(7) (A) & (B) would not apply to his FOIA request.  Since the Government has not met its burden, Summary Judgment should be granted to Plaintiff Kolbusz.

2.    EOUSA IMPROPERLY WITHHELD THIRD PARTY RECORDS REGARDING DR. ROSS

a) THE GOVERNMENT ERRS BY CLAIMING THAT KOLBUSZ DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES FOR HIS FEBRUARY 8, 2017 FOAI REQUEST PERTAING TO DR. ROSS

The Government errs in claiming that Kolbusz did not exhaust his administrative remedies for the February 8, 2017 FOIA request for records to pertaining to Dr. Ross. Kolbusz has already established in this reply brief (p8-12) that:  1) The Government never filed a Motion to Dismiss Kolbusz' Supplemental Complaint regarding Ross (p8 (i)), 2) The Government only raised this argument for the first time in its reply brief (p8 (ii)).  Therefore, it has waived these arguments and Summary Judgment should be granted to the Plaintiff.

b) THE GOVERNMENT ERRS THAT ROSS HAS NOT CONSENTED TO DISCLOSURE OF HIS DOCUMENTS

In Kolbusz' Motion for Opposition (EFC. No. 50, p4, B) & p5, #2), he has established that in the D.C. Circuit, that under the public domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record Cottone v. Reno, D.C. Cir. 1999).  Ross' information is in the public record and when he chose to testify and disclose this information at trial, that constituted consent to release this information to the permanent public record. (EFC No. 50, p5, #2).

c) THE GOVERNMENT STATES THAT KOLBUSZ DID NOT REQUEST ROSS' RECORDS FROM THE FBI

Rather than rely on the merits of their arguments, the Government now relies on a scrivener's error that Ross' records were incorrectly requested from the FBI and not EOUSA (R. p11, fn.9). It is obvious that Kolbusz' entire argument  related to the FOIA request  from EOUSA regarding Ross and not the FBI.  Arguing this minor data entry error (EFC No. 50, p5, C)) is meritless.

B.    DEFENDANTS' WITHHOLDINGS UNDER FOAI EXEMPTIONS

1.    FOIA Exemption 5

i.    THE ATTORNEY-CLIENT PRIVILEGE (R. p12-15)

KOLBUSZ REASSERTS HIS ARGUMENTS FROM HIS OPPOSITION BRIEF (EFC No. 50, P7-11)

a) THE GOVERNMENT HAS NOT MET ITS BURDEN TO ESTABLISH THE ATTORNEY-CLIENT PRIVILEGE
.    FOIA EXEMPTION b(5)-1

In its Reply Brief (EFC No. 66, p12-15), the Government regurgitates the same arguments that were made it its Motion for Summary Judgment (EFC No, 48, p17-18). Rather than advancing the ball, the Government remains at fourth down on its own 20 yard line.  No matter how many case laws are cited, and how many declarations they produce, they have made no attempt to meet their burden to claim FOIA Exemption b(5)-1.

The FOIA Standard and the Government's burden to establish that the attorney-client privilege applies in the FOIA context, a defendant MUST show:
(1) "the information in [the] documents was communicated to or by an attorney as part of a professional relationship,
(2) "the information is confidential" and
(3) the "communication is based on confidential information provided by the client."

The agency "must prove that [the withheld] document[s]" fall within the scope of attorney-client privilege. (Plaintiff's Motion in Opposition; EFC No. 50, p10, B &C).  The Government states they have exerted privilege over 13 documents (R. p13, fn.11), but have not provided any proof of the above standard. The Government's application of Attorney-Client Privilege Exemption cannot be trusted as they have improperly applied the privilege to released documents described in Plaintiff's Opposition (EFC No. 50, p9, Table I, Exhibits 16 A-F).

FOIA provides courts a "host of procedures" to determine whether the claimed exemption is proper, including discover, further agency affidavits, and in camera review of the records in question (EFC 50, p9).  Kolbusz requests the Court to consider an in camera review and discovery as the same unanswered question remains; Where is the Vaughn Index and a sample and description of the remaining withholdings contained on 40 CDS and an additional 1000 pages of documents in the FBI's possession? (EFC 50, p11, C)).

**ii.     THE DELIBERATIVE PROCESS PRIVILEGE**

KOLBUSZ REASSERTS HIS ARGUMENTS (Plaintiff Opposition EFC No. 50, p7-9)

a) TH FBI DID NOT MEET ITS BURDEN  WHEN APPLYING THE DELIBERATIVE PROCESS PPRIVILEGE b(5)-2
.    (R. P15-16)

(i) The Government admits that Hardy misapplied privilege exemptions at least in "some instances". (R. P15).  The open ended question is how many other documents did they misapply privileges?

(ii) The Government does not disagree that the documents presented by Kolbusz (EFC No. 50, p9, Table I) do not qualify for a Deliberative Process Exemption as they are not predecisional, do not reflect advisory opinions or recommendations by which the Government decisions and policies are formulated and do not reflect Investigative or Prosecutorial Strategies.

(iii) The Government defends creating a new category of FOIA exemptions called "Interview Prompts" that is not founded in any FOIA exemption or case law. They claim these prompts are "predecisional" as they "reflect only the tentative view of the authors; views that might be altered or rejected upon further deliberation". The Government then goes on to state that "Plaintiff has failed to present evidence that the interview prompts lost their predecisional status because the questions on the interview prompts were in fact asked during the interviews conducted during the investigation of him." (R. p14-15).

(a) <u>THE GOVERNMENT INAPPROPRIATELY SHIFTS THE BURDEN OF PROOF TO THE PLAINTIFF</u>

D.C. Circuit case law has established that it is the Government's burden to establish that the privilege is correctly asserted. Instead the Government tries to inappropriately shift the burden of proof to Kolbusz. It is not Kolbusz' burden to present evidence to contradict the assertion of the privilege.

"… [T]he Burden Is on the Government Agency to show that it has properly asserted the privilege. E.G., Pop. of the People In v. OMB, 330 F Supp. 3d at 380 (D.C. Cir. 9/14/2018). And unlike the agency's burden with respect to the adequacy of the FOIA search, its burden as to privilege "does not shift even when the FOIA requester files a cross motion for summary judgment because "the Government Ultimately [has] the onus of Proving that the [documents] are exempt from disclosure. Hardy v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 243 F. Supp. 3d 155, 162 (D.D.C. 2017). To meet its burden, the agency must offer "a relatively detailed justification" explaining why the privilege applies. Elec. Privacy Info. Ctr. v. U.S. Drug Enf't. Agency, 192 F Supp. 3d 92, 103 (D.D.C. 2016).

Since the Government has failed to meet its burden, Summary Judgment should be granted to the Plaintiff, Kolbusz.

**(iii)**     <u>**THE WORK PRODUCT PRIVILEGE (R. p16)**</u>

<u>**KOLBUSZ REASSERTS HIS ARGUMENTS FROM (EFC No. 48, p9-11)**</u>

a) <u>THE GOVERNMENT ADMITS THAT IT INAPPROPRIATELY WITHHELD DOCUMENTS UNDER THE ATTORNEY WORK PRODUCT PRIVILEGE 5(b)-3. (R. p16)</u>

In the Government's Motion for Summary Judgment (EFC No. 48, p16), the government argued that "the FBI properly withheld this information pursuant to Exemption 5, Hardy Decl. 48. The Government now states in its Reply Motion (EFC. No. 66, p16) that on July 17, 2020, the FBI released the information previously redacted based on the FBI's assertion of the work product privilege. 2d Seidel Decl." They assert that Kolbusz' argument is now moot.

Kolbusz contends that while the Government released certain documents, it is only a barometer of the inaccuracies in the FBIs original release of documents and that reviews and declarations made by Hardy are not bullet proof. Releasing some documents does not release the FBI from its burden of answering the pending question that it has artfully evaded; What's on the additional 40 CDs and where are the other 2000 pages of documents and the Vaughn Index? (Plaintiff's Motion EFC 48, p9-11).

Since the Government has still not fulfilled its entire burden, Summary Judgment should be granted in favor of Plaintiff.

        **2.**        **<u>EXEMPTIONS 6 and 7(C) (R. p16-20)</u>**

**<u>THE GOVERNMENT DID NOT MEET ITS BURDEN WHEN APPLYING FOIA EXEMPTIONS 6 & 7(C)</u>**

  a) **<u>BACKGROUND</u>**

In its Motion for Summary Judgment (EFC No. 48, p18-19), the Government initially argued that "FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of six specified harms, 5 U.S.C. 552(b)(7)." They go on to say that "Exemption 7(C) allows an agency to withhold records or information to the extent that production could reasonably be expected to constitute an unwarranted invasion of person privacy."(id. p19)

5 U.S.C Section 552(b)(7) in its entirety lists the 6 rationales for exemption and the Potential Harms that could prevent disclosure under FOIA:

(b) This section does not apply to matters that are:
(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information:

(A) could reasonably be expected to interfere with enforcement proceedings,
(B) would deprive a person of a right to a fair trial or an impartial adjudication,
(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,
(D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source,
(E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or
F) could reasonably be expected to endanger the life or physical safety of any individual;

We are in agreement that this section applies to records that that were collected for law enforcement purposes and that Potential Harms A and B would not apply as there is no ongoing criminal investigation and Kolbusz' trial ended in 2014, resulting in incarceration (November 6, 2015). Kolbusz is still currently incarcerated, albeit on Home-Confinement. Therefore, only 4 potential harms are at issue. The Government confirmed in its motion:

  "Plaintiff's investigative main file was compiled during the FBI's criminal investigation of Robert Kolbusz involving medical insurance fraud. Plaintiff was tried and convicted of the imputed charges on

August 28, 2015………….Therefore, these records were clearly compiled for a law enforcement purpose, allowing for the application of Exemption 7. Hardy Decl. 51." (Def. Mot. Summ. Judg. EFC No. 48, p20).

b) **GOVERNMENT IMPROPERLY WITHHELD DOCUMENTS THAT HAVE LOST THEIR PROTECTIVE CLOAK UNDER THE PUBLIC DOCTRINE DOMAIN (R. p18-19)**

Kolbusz reasserts his arguments in his Motion for Opposition (EFC No. 50, p12-24)

  The Government does not deny, and even admits that the information that Kolbusz presented in his Opposition Motion (EFC No, 50, p12-24), is in the public domain. Instead, the Government now shifts  its argument to try to convince the Court that Kolbusz' showing of the information already being in the public domain is insufficient for the following 5 reasons:

   1) represents an Overarching Rationale that this information is public because it was aired in his public trial,

   2) did not demonstrate that the information cited in his Response is as specific or matches the information withheld from disclosure

   3) it  wasn't public enough because the FBI did not find that the information it withheld pursuant to Exemptions 6 and 7(C) to be publically available. 2d Seidel Decl. 17;  and

   4)  information disclosed in Kolbusz' criminal trial "while technically public may be practically obscure." Plaintiff has not demonstrated that the information is permanently in the public domain

   5) The Government's reliance on Neary v. FDIC to support its theory that Kolbuusz' records are not public is misplaced.  Neary contended that the names of other job applicants were in the public domain because they were "openly displayed in a registration common area of the FDIC  Complex.  Unlike Neary, Kolbusz has proven that the names of FBI Staff and patients were recorded in a public trial and the transcripts are permanently embedded in the world-wide Pacer public website.

   (i) <u>THE GOVERNMENT IS WRONG ON ALL OF ITS 4 COUNTS:</u>

   **1**) The statement that Kolbusz' presents an overreaching rationale that this information is public because it was presented in a public trial is preposterous.

   Kolbusz was the victim of a 1 month open court public trial with 12 jurors and spectators. Kolbusz' trial and conviction was advertised world-wide. A simple Google internet Search on 12/24/202 demonstrates that this information is as public today as it was in 2014. **(EXHIBIT 4).**

   **2**) Kolbusz did demonstrate that the information cited in his response is as specific or matches the information withheld from disclosure.

   a) In Plaintiff's Opposition for Summary Judgment, Kolbusz specifically matched every category of withheld documents with documents in the public domain from his trial or otherwise. Kolbusz' presented over eighty (80) instances of improperly withheld documents and redactions which were only as example and non-exhaustive. (EFC  No. 50; p12-24, Exhibits 2-82).

b) Kolbusz also showed that even when the Government did release some Investigative reports (302's), their redactions were unjustified as the redacted portions were already in the public record (EFC No. 50; p20-24, Exhibits 57-81)

c) The Government itself released the names of its own FBI agents and even their personal information and phone numbers into the public domain.  The cloak of presumed secrecy has vanished. (EFC  No. 50; p13, Exhibits 4 & 18-23).

**3)** The admission by the FBI that they did not find the information it withheld publically available is only a reflection of the ineptitude of its searches. (R. p19, 2d Seidel Decl. 17).

a) The FBI knew of Kolbusz' federal public trial as they investigated it for 7 years and the agents participated in the trial (EFC No. 50, p13, #5, Exhibits 18-20). The FBI and the DOJ disclosed this information on the world-wide internet **(EXHIBIT(s) 5 & 6)**. AUSA did not expect Kolbusz to have the wherewithal to investigate and expose the deficiencies in their searches.

b) In his Declaration (EFC No. 66 2d Seidel Decl. at #17), Seidel states that disclosure at trial and disclosure under FOIA are not synonymous.  AUSA fails to support this declaration with any statute or case law in its memorandum of law.  Therefore, this argument  lacks any legal merit .

**4)** The information disclosed in Kolbusz' public trial is not practically obscure and is permanently in the public record.

a) Kolbusz' search warrant records are permanently embedded world-wide in the Pacer Court System dockets  (EFC No. 50. p12-14, Exhibit 4).

b) Kolbusz trial records and transcripts (12-cr-782) are also permanently embedded in the public Pacer system **(EXHIBIT 7)**.

Kolbusz has met the burden of showing a waiver occurred. Plaintiff has shown:
1) the information requested was as specific as the information previously released
2) the information requested matched the information previously disclosed
3) the information request  must already have been made public through an official and documented disclosure.

.       c) **PLAINTIFF HAS ESTABLSIHED THAT MEDICAL FILES ARE IN THE PUBLIC RECORD AND SHOULD
       NOT BE WITHHELD (FOIA EXEMPTION 6)**

Kolbusz restates his arguments regarding  patient's medical records in (EFC No. 50, p15-16)

.       d) **PLAINTIFF HAS ESTABLISHED THAT THE PUBLIC  INTEREST OUTWEIGHS THE INTERESTS OF THE
       WITHHELD DOCUMENTS**

In seeking this balance, the Court sets forth a two-prong test to determine whether the information should be disclosed under Exemption 7(C). First, the citizen must show that the public interest sought to

be advanced is a significant one; this interest must be more specific than having the information for its own sake.  Second, the citizen must show the information is likely to advance that interest. If either prong fails, then the invasion of privacy is unwarranted. Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 171-172, 124 S. Ct. 1570, 158 L.Ed.2d 319 (2004).

   Kolbusz has established that his patients and the general public have a significant  interest to know that their personal medical files, despite HIPPA, are being shared, distributed to 3rd parties and placed into the public domain without their prior approval.  This extrapolates nation-wide to any physician and patient  files that the FBI has ever seized.  At the appropriate time, Kolbusz intends to publish this information so patients and the general medical community are aware that their allegedly confidential medical files are not truly as confidential as one make think.  Most  physicians and patients do not know that this is what their Government is up to.

    The Supreme Court has explained that the FOIA is "a means for citizens to know 'what their Government is up to.' This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy."  Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 171-172, 124 S. Ct. 1570, 158 L.Ed.2d 319 (2004).

   In Summary, Kolbusz has met his burden to withstand Summary Judgment in his favor.

(ii)      <u>EOUSA (R. p21)</u>

<u>EOUSE IMJPROPERLY WITHHELD DOCUMENTS, EXEMPTIONS b(6) AND b(7)(C)</u>

   a) <u>THE GOVERNMENT MISCHARACTERIZES KOLBUSZ' ARGUMENT (DEF. OPPOSTION EFC No. 50, P18-19)</u>

   The Government argued that  EOUSA  withheld documents because they were created for Kolbusz' prosecution. EOUSA therefore applied the Privacy Act  b(6) and b(7)(C) to protect the patients and or other health professionals because the documents contained confidential information. (Def. Motion for Summary Judgment, EFC No. 48, Hudgins Decl. #21-22).

   In his opposition Kolbusz proved that the Government's argument  is of whole cloth:

 a) EOUSA had already released confidential information regarding Kolbusz' expert witness, Dr.
     Goldberg (EFC  48, p18, Exhibit 15).
 b) The FBI had already released records under FOIA to Kolbusz regarding communications to AUSA
     Stephen Lee (id. Exhibit 50).
 c) AUSA released the names of these allegedly protected individuals at Kolbusz' trial.
     (id. Exhibits  24 &25).

  Kolbusz reiterated that that Exemption 6 and 7(C) could not have be appropriately applied as the document searches by EOUSA  are inadequate and incomplete:
 a) EOUSA did not open and review 3 CDs
 b) EOUSA did not do its own searches

c) EOUSA did not provide a Vaughn Index of the withheld documents

   The Government  improperly withheld these documents and did not meet its burden to withstand Summary Judgment.

(iii)       <u>DEPARTMENT OF LABOR</u>

   The Government  failed to reply to Kolbusz' response that the Department of Labor improperly invoked FOIA Exemption 6 and 7(C). (EFC  No. 50, p19-24).  Therefore, it has conceded any rebuttal regarding this issue.

   The Department of Labor released FOIA documents to Kolbusz, including numerous allegedly confidential patient files (Plaint. Motion EFC  No. 50, p19, Exhibits 52-A & 54).  Any and all arguments by the Government that patient files are Exempt under FOIA 6 and 7(C) have been self-defeated.


   Summary Judgment  regarding the release of all patient files by the FBI / EOUSA should therefore be granted in Plaintiff's favor.


3.       <u>EXEMPTION 7(D) CONFIDENTIAL INFORMANT (R. p22-23)</u>

<u>THE GOVERNMENT IMPROPERLY APPLIED FOIA EXEMPTION 7(D)</u>

<u>KOLBUSZ RESTATES HIS ARGUMENT FROM IS OPPOSITON MOTION (EFC No. 50, p25-26)</u>

   The Government claims that Hardy has located some cryptic document that its source was assure confidentiality, but have failed to produce this document .  Therefore they state that they had no need to display markings of confidentiality on these docments (R. p22)

   (i) <u>THE GOVERNMENT  DID NOT MEET ITS BURDEN TO SHOW THAT THE CONFIDENTIAL SOURCE RECEIVED AN EXPRESS ASSRUANCE OF CONFIDENTIALITY. (EFC No. 48, HARDY DECL. 67)</u> .

   a) The FBI did not make a sufficient showing that the individuals being protected were "confidential informants." There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation," DOJ v. Landano, 50 ₁ 81 113 S. Ct. 2014, ₁₂₄ L.Ed. 2d 84 (1gg3), and a source's confidentiality must be determined on a case-by-case basis'. While Hardy did not offer, how the FBI determined the source was confidential, the Government has now uncovered a cryptic document that suddenly emerged to explain that this source was assured confidentiality..(EFC No. 66, Seidel Decl. 18). The Government has not produced any documented proof that the source was assured confidentiality..


   b) The Government states that there is no need to display markings of confidential source or provide the Court with a sampling of the documents. The Government and Hardy completely ignore their burden. The D.C. Court previously found that source documents where only properly withheld with the express assurance of confidentiality when Hardy's Declaration included the proper designations on the withheld documents.

21

Boehm v. FBI 948 F. supp. 2d 33 (D.C. Cir..6/10/t2013).  The Boehm court found that information was only properly withheld with the express assurance of confidentiality when Hardy's Declaration included the designations of "Protected Identity," "Cooperating Witness," or "Cooperating Source" id' see also Dent v. Exec' Office of the U.S.Attys.926 F.Supp..2d 257(D.C. Cir. March 2, 2013).

c) The Government does not deny that there is no concern the source is endangered.  Rather it turns its attention to that "Exemption 7(D) is designed to prevent  sources from "drying up" because of fear of disclosure." (R. p22). This argument is belied by the fact that  Hardy swore that the informant's information is "singular in nature and unique to this source due his/her proximity to the criminal elements on which he/she reported."

(ii) **IT IS IMPOSSIBLE THAT THIS SOURCE REPORTED INFORMATION RELATED TO CRIMAL ELEMENTS**:

(a) The Government  executed  Kolbusz' Search Warrant on 9/23/2011 (Plaint. Opp. EFC. 50, Exhibit  2-A).

(b) The Informant provided information to the FBI from June through August of 2012 (See. Plaint. Opposition EFC 50, Exhibit 82)

(c) The Government indicted Kolbusz  for charged crimes that occurred  between 2003 and 2010 (See Plaint. Opp. EFC No. 50, Exhibit 17).

Therefore, the Informant cold not have provided  information related to the charged criminal elements.  Rather, the FBI may be withholding these documents not under an assurance of confidentiality, but  rather not to expose potential warrantless searches of Kolbusz' offices and Brady and Gigli trial violations.

iii) The Government does not deny that there is a public interest  in the release of these documents.

iv)  The Government does not argue that these documents are not Segregable

In Summary, the Government has not  met  its burden to withstand Summary Judgment.  The documents withheld under Exemption 7(D) should be released in full.  At least the Court should consider conducting an in camera inspection of these withholdings and the documents described in Seidlel's declaration  #18, allegedly assuring confidentiality to the source.

### 4.   EXEMTPTION 7(E)  LAW ENFORCEMENT TECHNIQUES AND PROCEDURES (R. P23)

### KOLBUSZ REAFFIRMS HIS ARGUMENTS (EFC No. 50,  p26-27)

a) FBI FAILS TO MEET ITS BURDEN FOR FOIA EXEMPTION 7(E)

Instead of relying on the clear cut arguments in Kolbusz' brief, the Government  depends upon a scriveners error to claim that Kolbusz  "does not dispute that the FBI data base is properly exempted."

   (i) In Kolbusz' brief he stated that  "Kolbusz does not dispute that the FBI private data base is properly exempted under 7(E).  The opening statement should have read "Kolbusz does not dispute that the FBI data base MAY BE properly exempted under 7(E).

   (a) It is clear from the title of his argument as well as from the follow up statement:  "However, the FBI failed to meet the remainder of its burden in invoking the 7(E) FOIA Exemption", that Kolbusz did not  intend to concede or waive his argument.

   (ii)  The FBI does not deny that none of the documents conformed to the labeling requirements which noted the use and rated the efficacy of various investigative techniques, which the D.C. Court required to properly invoke a 7(E) FOIA  Exemption (Stein v. U.S. Dept. of Justice).  Hardy's Declarations (EFC No 48, 69-72) do nothing more than regurgitate the FOIA statutes.  The Court places the  burden on the Government  by requiring the agencies to logically demonstrate how the release of the requested information might create a risk or circumvention of the law ( Mayor Brown v. IRS).  Hardy shows no logical demonstration of this requirement.

   The Government did not meet its burden to withstand Motion for Summary Judgment.


## III.   DEFENDANT'S IMPROPERLY WITHHELD SEGREGABL INFORMATION (R. p23-24)

   The Government states that :
  1) "the FBI has released all segregable information…" and "as noted, the documents Plaintiff claims were seized are not the documents that are the subject of his FOIA or Privacy Act request to the FBI. The FBI  appears to argue that all the documents they seized do not constitute a correspondence with Kolbusz' name on them.  However, the FBI would have transmitted by correspondence, by letter, disc or other electronic means all the contents of its case file to the DOJ / EOUSA.  A cover letter describing the contents of the file and its Passwords would have accompanied the files.  As previously noted, if the FBI did not transmit this correspondence to EOUSA / DOJ, it would have been impossible to prosecute Kolbusz' case and would constitute Brady and Giglio violations.

2) THE GOVERNMENT INAPPROPRIATELY SHIFTS  ITS BURDEN TO KOLBUSZ

   The Government states that "Having  failed to provide evidence to the contrary, Plaintiff has not rebutted the presumption that the FBI complied with its obligation to disclose all reasonably segregable information.  However, the burden of demonstrating  segregablity is born by the Government, not Kolbusz, infra.

   The Government bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents.  Army Times Publ'g  Co. v. Dep't of Air Force, 998 F .2d 1067, 1068, 302  U.S. App. D.C. 432 (D.C. Cir. 1993). The agency must "provide a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable material has been released."

Valfells v. ClA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010).  Agencies and Courts must  "differentiate among the contents of a document rather than  treat  it as an indivisible 'record' for FOIA purposes." Abramson, 456 U.S., 626, 102  S. Ct. 2054, 72  L. Ed. 2d 376 (1982). The agency should, for example, "describe what proportion of the information in [the] documents, 'if any,' is non-exempt and how the material is dispersed through the document[s]." Elec. Frontier Found., 826F. Supp.2d at 174 (citing  Mead Data {892 F. Supp.2d 334} Cent., Inc., 566 F .2d242, 261, 184 U.S.

   The Government has not met its burden to withstand Summary Judgment.  In camera review by the Court, discovery, and a Vaughn Index may be needed to settle this issue of segregability.


## IV. THE COURT SHOULD DENY DEFENDANT'S OUTSTANDING REQUEST FOR RELIEF FOR FAILURE TO DEMONSTRATE ENTITLEMENT TO RELIEF (R.  p24-28)


   Finally, the Court should deny Defendant' Motion for Summary Judgment in its entirety AND Grant Plaintiff's Motion for Summary Judgment. Plaintiff  requests an order compelling  Defendant's to produce documents based on Judge Sullivan's June 20, 2018 Minute Order, and Plaintiff's request  for the Court  to alter or amend Judge Sullivan's June 27, 2019 ruling.  Furthermore, arguments regarding Plaintiff's Second Supplemental now raised for the first time in Defendant's Reply Brief closing arguments should be stricken.

   **A.   DEFENDANT IS NOT ENTITILED TO SUMMARY JUDGMENT BECAUSE  DEFENDANT'S  IMPROPERLY  WITHHHELD INFORMATION AND DID NOT RELASE ALL SEGREGABLE RESPONSIVE  INFORMATION.**

**1)  THE AUSA'S HAVE  FAILED TO FILE  A  MOTION TO DISMISS (EFC  No. 3). AND THESE RECORDS  SHOULD BE RELEASED**

a) On 3/6/2017, Kolbusz submitted a Supplemental Complaint (DE# 3) requesting all contracts between the Government  and Dr. Edward Ross.  The Government did not oppose the filing of the supplemental Complaint'

b) On 10/9/2018,  AUSA  Sroka  issued a status Report.  He noted that he believed that Plaintiff (Kolbusz) did not exhaust his administrative appeal remedies with respect to this request' (DE# 23, p2, #4)'

c) After being granted numerous extension of time to file a Motion to Dismiss Kolbusz' Supplemental Complaint, regarding Dr. Ross (EFC No. 3), Sroka made one last appeal to the Court .  On 8/6/2019 (EFC No. 42), Sroka filed another Motion for Extension of Time to "File Motion TO DISMISS."

d) In its 1/21/2020 Order, this Court  denied Kolbusz' initial Motion for Summary Judgment regarding Ross' records  (EFC No. 46) as moot.  The Court also denied the Government's Extensions for Time to file

Motion to Dismiss as Moot.  These Motions were replaced by the Government's Motion for Summary Judgment and pending Opposition Motions.

  e) The Government (AUSA Sroka) failed to file a Motion to Dismiss or even Incorporate a Motion to Dismiss Kolbusz' Supplemental Complaint (EFC No. 3), into its  Motion  for Summary Judgment  (EFC No. 48).  Instead, the Government  argued that they denied this FOIA  request  because there was no written consent  for release from Ross. (EFC No. 48, p11). No searches were performed  by EOUSA for the same reason (EFC No. 48, p4, fn. 1).

f) By raising  a new argument  (for a motion to dismiss) for the first time in its reply brief, the Government has waived such argument.

**NOTE:**  At the time the Government filed its  Motion for Summary Judgment (EFC No. 48; 10/3/2019), the Court allowed for renewal of Kolbusz' Motion for Summary Judgment (EFC No. 46, 8/26/2019).  The Government  had every opportunity to respond to Kolbusz' motion and file its dispositive motion to dismiss Kolbusz' Supplemental Complaint (EFC No. 3)  and Second Supplemental Complaint  (EFC No. 25). It was not until 1/10/2020, that  Judge Sullivan referred the case to the Magistrate. Judge Harvey's rulings finding some of these motions as moot  was not issued until 1/21/2020.

    For all the above reasons, Plaintiff's Motion for Summary Judgment should be granted and the Government's Motion denied.

        (i)    DUPLICATIVE FOIA REQUESTS AND SATISFACTION OF ADMINISTRATIVE EXHAUSTION.

    There is controversy whether duplicative FOIA requests may satisfy administrative exhaustion, which is the case for Kolbusz' Supplemental Complaint  (EFC  No. 3) regarding  Ross' records.  In the event the Court does not find that the Government waived this argument, supra.,  Kolbusz will seek leave to file a 4th Supplemental Complaint to support  his arguments.

    Such as amendment would not  radically alter the scope and nature of the case, would be directly related and is not tangential, and is already involving the same agency and issue as is at odds in this case. No rulings have been made to date regarding this issue.

**2) THE GOVERNMENT'S ARGUMENTS  REGARDING  KOLBUSZ' SECOND SUPPLEMENTAL COMPLAINT RAISED FOR THE FIRST TIME IN DEFENDANT'S CLOSING  ARGUMENT IN ITS REPLY BRIEF SHOULD BE STRICKEN (R. p24-27)**

 **KOLBUSZ REASSERTS HIS ARGUMENT FROM  HIS MOTION IN OPPOSITION (EFC No. 50, P29)**

   The Government now attempts to respond to Kolbusz' Second Supplemental Complaint  for the first time in its Reply Brief's closing arguments. The Government did not ever file a Motion to dismiss this complaint.  In the Government's Motion for Summary Judgment (EFC No. 48) neither AUSA Sroka or EOUSA  Attorney-Advisor Hudgins address any part of Kolbusz' Second Supplemental Complaint.

1) <u>THE GOVERNMENT REPRESENTATION OF THE FACTS OF KOLBUSZ' ORIGINAL FOIA COMPLAINT</u>
  <u>of 6/27/2017  ARE MISLEADING</u>

**(a)** Kolbusz submitted his FOIA request on 6/27/2017 to EOUSA requesting:

"All notes of interview, memorandum, e-mails, letters, reports, or documents of any kind
relating  to the case of United States v. Robert Kolbusz, 12-CR-782, N.D. Il, Easter Division,
at Chicago, Illinois." (2nd Hudgins Decl. EFC No. 66-2, p12-13)

**(b)** On May 9th, 2018 EOUSA  denied the request  stating "A search for records located in the United
States Attorney's Office(s) for the Northern District of Illinois, has revealed no responsive records
regarding the above subject." (id. p23).   Hudgins offers no explanation why it took 9 months to answer
the FOIA request.  Hudgins now swears that that response was in error (id. p4, #14).

(i) Hudgins also claimed that she sent a search request  to USAO-ILN because that district handled
Kolbusz' prosecution. However, she suspiciously does not tell us the date when this request was sent or
provide any communications from USAO-ILN on the subject matter (id. p4, #13). Hudgins states that the
USAO-ILN searched and determined that the release of the records would hinder on- going proceedings
because:
  (1) The Plaintiff had an Appeal of his criminal trial pending
  (2) Plaintiff also had a pending lawsuit brought under Section 2255.  (id. p4, #14).

(ii) However, what Hudgins doesn't tell this Court  is that :
  (1)  Kolbusz' Criminal  Appeal was dismissed on 9/21/2016, long before this FOIA request
      **(EXHIBIT 8).**
  (2) Kolbusz' original 2255 filing  (18-cv-35) of 1/4/18 was rejected due to excess pages (18-cv-35
      EFC No. 24) and was not actually filed until 4-16 2018, long after Kolbusz' FOIA  request ( See
      docket 18-cv-35,  EFC  No. 34)  **(EXHIBIT 9).**

**(c)** On May 22, 2018, Kolbusz appealed this denial stating that it is impossible that there were no
responsive documents because.. "on January 17, 2017, Judge John Z. Lee, in the Northern District in
Illinois, issued an order for the U.S. Attorney and other Government  agencies to preserve notes of
interviews taken by the Government in Kolbusz' criminal case." (12-cr-782). (id. p22)

(i) NOTE: Kolbusz included this court order in his appeal not for the truth of the matter asserted,
but only to show that the documents exited. The Government offers no rationale why it took them 9
months to answer a FOIA request.

**(d)**  On 4/9/2019 , almost  1 year later, the DOJ  finally responded to the appeal.  Their denial
reaffirmed the denial under the Privacy Act.  They went on to also say:

"This information is properly withheld from you in full because it is protected from disclosure under the
FOIA  pursuant  to 5 U.S.C  552(b)(7)(A) and it is reasonably foreseeable that disclosure of this
information would harm the interests protected by this provision. This provision concerns records or

information compiled for law enforcement  purposes the release of which could reasonably be expected to interfere with enforcement proceedings." (2nd Hudgins Decl. 66-2, p27-28.).

In the Government 's Reply (EFC 66, p26), they stated EOUSA  made this denial "because Plaintiff filed a motion Section 2255 challenging  his sentence in the United States v. Robert Kolbusz, Civ. A. No. 18-0035 (N.D. Ill)."  Interestingly, there is no reference to a Section 2255 motion in  EOUSA 's letter denying Kolbusz' appeal. Their application of FOIA  Exemption 7(A) is nothing more than the non-specific regurgitation of the FOIA statute.

2) THE GOVERNMNET'S RELIANCE ON COMPARING  KOLBUSZ  DIRECTLY WITH SARNO V. DEP'T OF
   JUSTICE AS AUTHORITY TO DENY DOCUMENTS UNDER EXEMPTION 7(A)  IS MISPLACED (R. p25-26)

a) COMPARISON OF SARNO'S CASE TO KOLBUSZ' CASE

The Government attempts to cite the Sarno case as authority because Sarno's  request  for his criminal file was denied by the Court under FOIA Exemption 7(A).  While there are similarities between Kolbusz' and Sarno's case, there are also vast distinctions.  The similarities and distinctions actually both support Summary Judgment  in favor of Kolbusz  and not the Government.

Sarno  was convicted on Racketeering and RICO charges and sentenced to 300 months in prison on March 15, 2012.  Sarno had other co-defendants. Sarno was at the beginning of his 25 year sentence when he filed his FOIA request.  Any relief from his 2255 motion would likely result in a new trial.  Unlike Sarno, Kolbusz is serving his final year of an 84 month sentence in home-confinement.  It is unlikely that his 2255 will be settled by the end of his sentence, and therefore is unlikely to be retried even if relief is granted. Also, Kolbusz is a single defendant without co-conspirators that are likely to be retried.

On September 23, 2014, Sarno submitted FOIA requests to the ATF, seeking documents related to his criminal case. Sarno's request  was referred to the Northern District of Illinois  (like Kolbusz) as that  is where his case originated.  But that is where the comparison starkly ends.  In Sarno, the Chicago Field Office provided a timely categorical description of the documents in the file.  Only after identifying 32,575--43,370 responsive documents, the ATF denied Sarno's request  in full and also denied segregation.   In Kolbusz case, the Chicago Office provided No Searches or descriptions of withheld documents. The AUSA's apparently calculated their delay to Kolbusz' FOIA response for almost  1 year to await  the filings and rulings in Kolbusz' 2255 motion in the 7th Circuit  District Court.

In Sarno's case Judge Collyer noted: "Typically, agencies provide to courts an itemized description of all withheld documents, with a brief description of the document, the exemptions claimed, and the bases for the claimed exemptions. The index, known as a Vaughn  Index, allows the court to assess the validity of an agency's withholdings."  Judge Collyer found that the extensive categorization of documents provided to Sarno can substitute for a Vaughn Index, citing Maydek v. U.S. Dep't of Justice. Unlike Sarno, the Chicago Office did not provide Kolbusz with any search or description of its withholdings  for this Court to assess.

It is true that Judge Collyer found that FOIA Exemption 7(A) was appropriate in Sarno's specific case due to the pending 2255.  However, this finding is not universally applicable to all cases including Kolbusz'.  Significantly, Judge Collyer stated: "ATF cites no case, and the Court can identify no controlling precedent, in which Exemption 7(A) was held to be applicable solely on the basis of an ongoing habeas proceeding. The only time the D.C. Circuit certified the question of whether a habeas proceeding qualified as a pending action for the purposes of Exemption 7(A), the government  voluntarily withdrew its argument asserting that it did so before the Circuit  ruled on the question, for what appears to be some concerns as to that arguments validity. (Maydek). That decision, while not precedential, illustrates the complexity of the issue."

b) THE GOVERNMENT'S APPLICATION OF FOIA EXEMPTION 6 & 7(C) IS NOT SUPPORTED BY SARNO
(R. p27)

The Government states that the application of Exemption 6 and 7(C) is appropriate in Kolbusz' case because it protects the names and identifying information of third parties and would lead to their harm.

In Sarno, Judge Collyer also noted: "In a post-conviction habeas proceeding, therefore, it is not necessarily clear what non-public information  Exemption 7(A) would be protecting that would not already be subject to withholding under another exemption. "Under our public-domain doctrine, material normally immunized from disclosure under FOIA , lose their protective cloak once disclosed and preserved in the permanent public record" (Cottone v. Reno).   Ultimate Judge Collyer denied ATF's Motion for Summary Judgment and ordered the ATF to "Supplement  its description of the records withheld  in order to more fully explain whether any documents otherwise exempt  on Exemption 7(A) have entered the public domain."

Kolbusz has shown in his Opposition Motion (EFC No. 50, p12-24) that the AUSAs in his trial submitted extensive documentation from Kolbusz' case file into the public domain.  Kolbusz should be granted the same Supplementation of his FOIA request as Sarno. The Government's Motion for Summary Judgment should be denied.

b) THE GOVERNMENT MISAPPLIED OTHER FOIA EXEMPTION 5, 6, & 7 TO KOLBUSZ'  SECOND
SUPPLEMENTAL COMPLAINT (R. p. 26)

The Government relies on Hudgins 2nd Declaration  (EFC No. 66-2, P7, #14) to inappropriately apply these exemptions. Hudgins lists a variety of reasons to justify these exemptions;  most notably 1) that these documents might be needed to support the handling of Kolbusz' criminal appeal and 2) how to respond to the Plaintiff's Motion to Disqualify Government Counsel.   Hudgins fails to recognize that both of these motions have already been ruled upon and dismissed.  See Kolbusz denial of criminal appeal, 9/21/2016 **(EXHIBIT 8)** and Docket  (18-cv-35, DE#  37, 8/9/2018) denying  Kolbusz' Motion to Disqualify Government Counsel **(EXHIBIT 9).**

In Sarno,  Judge Collyer deemed other extensive withholdings unjustified as the government 's "explanation merely mirrors the language of the FOIA exemption. Missing in any description…or any statement from which the Court could conclude that disclosure of the information might reveal a law enforcement technique or procedure.  The ATF thus fails to justify its decision to withhold information."

Similarly, in Kolbusz' case, the government repeatedly only regurgitated the FOIA statutes and its withholdings are therefore unjustified.  Hudgin's declarations attempting to justify a withholding,, are plain wrong,  supra.

### B. & C.  PLAINTIFF'S MOTION TO COMPEL & MOTION TO ALTER OR AMEND THE JUDGMENT ARE NOT MOOT (R. p27-28)

The Government now directs this Court to find Plaintiff's Motion to Compel and Motion to Alter or Amend Judgment (holding the Government  in contempt) as Moot. The Government  appears to ignore that when this case was referred to the Magistrate  for "full case management" (Minute Order 1/1/2020), Judge Harvey did not  dismiss these motions as Moot..

The Government  states that Kolbusz' Rule 59 motion should have been viewed as a request under rule 54(b) (R. p28, fn. 16). This is evidence that the Government  never read the Magistrates Order of 1/21/20.  In this Order, the Court  ruled that Kolbusz' Rule 59 motion will be construed as a Rule 60(b) motion in this proceeding  (See Order EFC No. 52, p2).

#### a) PROCEDURAL HISTORY REALTING TO THE COURT'S MINUTE ORDERS

The Government's arguments  hinge on its presumptions that  it complied with the Court's Minute Order of 6/20/2018 and  properly sought leave for extensions when necessary.  Kolbusz contends that the FBI never complied with this Minute Order, by not  producing the promised documents and failing to seek leave for extension related to production of these documents. These motions are intertwined:

1) In his 6/5/2018 Status report,  AUSA  Sroka told the Court that the FBI searches resulted in 2,942 pages of potentially responsive material and 80 CDs of additional material.  Sroka referred 20 CDs to EOUSA to review and proposed to provide the information on the remaining CDs to Plaintiff on or before July 2, 2018.  Sroka promised to make his first  production of documents to Plaintiff by September 4, 2018, and to review and process 500 pages per month on a rolling basis thereafter with additional productions being  made on the first of each month. (EFC  No. 18, p1).

2) Based on the Government's representations the Court issued its 6/20/2018  Minute Order: "In view of the parties status reports and in light of Plaintiff's allegations that he initially  made his FOIA request in 2016, the Court directs the FBI to complete its production of documents to plaintiff by no later than September 1, 2018.

3) In its 9/18/2018 Status Report  (EFC No. 23), AUSA  Sroka stated that: "The FBI processed 928 pages associated with Plaintiff's FOIA request and has released 844 pages to Plaintiff in whole or

part…….The FBI has referred 20 CDs and 11 pages of records to EOUSA for processing and direct response to Plaintiff.

  4) June 27, 2019  MINUTE ORDER:   "Denying **37** motion to hold  government in contempt for violating Minute Order of June 20, 2018.  The Court finds that the government has complied with the Court's orders in this case and has properly sought leave of Court when any alteration to the Courts order was deemed necessary."

  b) <u>THE MOTIONS TO COMPEL  AND  ALTER / AMEND JUDGEMENT ARE NOT MOOT</u>

    1)  In his Motions to hold the FBI in Contempt  and  Motion to  Amend the 6/27/2019  Minute Order (EFC no. 37),  Kolbusz provides the details of how the FBI failed to adhere to the 6/20/ 2018 Minute order to produce documents.   The government only processed 928 pages of 2,942 potentially responsive documents and referred 20 of 80 CDs to EOUSA. .  The FBI has provided no explanation or Vaugh Index regarding the withheld documents.  The question remains open and this Court has agreed to review this issue de novo.

    2)  There is more compelling evidence that the Government did not comply with its document production order.  On August 7, 2019, Kevin Krebs, Assistant Director of EOUSA, sent Kolbusz a direct correspondence of EOUSA's final action regarding  FOIA Request Number: EOUSA  2018-004864. (See Motion to Compel, EFC No. 44,  Exhibit 6).  Kreb's stated:

   "This is in reply to your Freedom of Information Act/Privacy Act request dated
     October 1, 2016 to the Federal Bureau of Investigation (FBI). Records were
     referred to our office from the FBI for a direct response to you."

  Kreb's  letter comes only after Kolbusz  filed his motions to compel, hold the FBI in contempt and amend the Court's 6/27/2019  Minute Order.  Because this action is in litigation, Kolbusz views Kreb's direct communication as an end run to provide the  illusion of compliance and circumvent the authority of the Court.. But it was too little and much too late.

  3) Finally, Kolbusz contends that the Court erred in its 6/27/2019 Minute Order as the Government never sought  the appropriate leave to file Motions for Extension of Time as related to the production of documents. Rather, the extensions granted were related to other filings in this case. (See Motion to Alter or Amend Judgment  EFC  No. 40, p2) .  The Minute Order did not offer an explanation of how Judge Sullivan reached his conclusions.

   This Court has agreed to reconsider the rulings of Judge Sullivan's 6/27/2019 Minute Order de novo. Upon reconsideration and review of the record, Kolbusz requests that the Court  find the Government to be held in contempt and issue and Order to compel the FOIA documents  in accordance with the Court's 6/20/2018 Minute Order.

## CONCLUSION

Defendant has not met its burden for summary judgment. To justify summary judgment, Defendant has the burden to make two showings: (1) "that its search was adequate," and (2) "that  any withheld documents fall within an exemption to FOIA." Carney, 19  F .3d at 812. Defendant has failed to carry its burden on either issue. Summary judgment therefore must be denied.

The Defendant has failed to show that it conducted an adequate search. An adequate FOIA search is one "reasonably calculated to discover the requested documents." Grand Cent. Partnership, Inc., 166 F .3d at 489 (quoting Safe Card Servs., Inc. v. SEC, 926 F .2d 1197, 1201 (D.C. Cir. 1991)).  Before summary judgment can enter, "the defending agency must  show beyond material doubt that  it has conducted" such a search. Vietnam Veterans, 8 F. Supp. 3d at 205 (quoting  Morley v. CIA, 508 F.3d 1108, 1114(D.C. Cir. 2007)). Rather than make this required showing, Defendant relies on a combination of threadbare descriptions, conclusory statements, and irrelevant deflections. The available evidence shows that Defendant failed to uncover numerous responsive documents in its possession. At a minimum, material disputes of fact regarding the reasonableness of Defendant's searches preclude summary judgment. Defendant's motion should be denied.

Defendant has now moved for summary judgment, but patently fails to carry its legal burden. Defendant relies on vague affidavits that provide little information about  the documents it searched. Similarly, Defendant leaves Plaintiff and the Court unable to determine whether Defendant unlawfully withheld records. Because Defendant has not satisfied its burden, its motion for summary judgment should be denied, and Plaintiff should be allowed to take limited discovery to develop a reliable record concerning the searches Defendant conducted.

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1) DENY Defendant's Motion for Summary Judgment
2) GRANT Plaintiff's Cross Motion for Summary Judgment
3) GRANT Plaintiff's Motion to Compel.
4) GRANT Plaintiff's Motion to Alter or Amend the Judgment
5) GRANT Plaintiff's Motion for Discovery and a Vaughn Index

Dated:  October 31, 2020

Respectfully submitted,

By:   /s/ Robert Kolbusz

Robert Kolbusz
201 Main Street
Unit 3B
Houston, Tx 77002

(832)-696-1789

## *CERTIFICATE OF SERVICE*

I hereby certify that on this 31st day of October, 2020, I caused a true and correct copy of the forgoing to be sent by email to:

Michael A. TIlghmann
Assistant United States Attorney
Michael.Tilghman@usdoj.gov